IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| MAX HARRIS, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. G-06-424 |
| § | |
| INTERNATIONAL CHEMICAL § | |
| WORKERS UNION COUNCIL, et al., § | |
| § | |
| Defendants. § | |

**ORDER DENYING PLAINTIFF'S MOTION TO REMAND**

Plaintiff brought suit in state court against Defendants International Chemical Workers Council, Art Stevens, and Local 900C, International Chemical Workers Union Council alleging various state law causes of action. Defendants removed the case, arguing that Plaintiff's claims are completely preempted by federal law. Now before the Court is Plaintiff's Motion to Remand. For the reasons analyzed below, Plaintiff's Motion is **DENIED**.[1]

**I.    Background**

Plaintiff was employed by Koch Industries ("Koch") and its predecessor for nearly thirty years until he was terminated on July 1, 2004. On April 30, 2004, Koch had taken over the plant where Plaintiff worked. At the time of the takeover, Koch allegedly agreed to recognize the Local Union ("the Local"), an apparent subdivision of the International Chemical Workers Union Council

---

[1] The Court does not consider this Order worthy of publication. Accordingly, it has not requested and does not authorize publication.

("the Chemical Council"), but did not adopt any contract or collective bargaining agreement.[2] At the time of Plaintiff's termination, there was no contract in place between the Local and Koch. All Parties agree that there were no arbitration or grievance proceedings in place on the day Plaintiff was terminated. On July 7, 2004, Koch and the Unions entered into an agreement which put in place procedures for, among other things, appealing and contesting terminations ("the Interim Agreement"). Plaintiff alleges, and the Unions do not dispute, that the Unions and Koch, through a verbal Retroactivity Agreement, agreed to apply the Interim Agreement to Plaintiff's July 1, 2004 termination.

Art Stevens, a union representative, submitted a written request for arbitration of Plaintiff's termination on November 9, 2004. Under the terms of the Interim Agreement, this was not a timely submission. Because the request was not timely submitted, Plaintiff's termination became essentially unarbitrable pursuant to the terms of the Interim Agreement. Plaintiff now contends that Stevens and the Unions had a duty to protect Plaintiff's arbitration rights, and that such duty was breached to Plaintiff's detriment. In support, Plaintiff contends that if a timely written demand had been made for arbitration, that he would have been reinstated in his position at Koch.

Plaintiff originally filed suit on May 26, 2006 in Galveston County Court at Law No. 3. On June 30, 2006, all three Defendants removed the case to this Court pursuant to its federal question jurisdiction. Specifically, Defendants argue that Plaintiff's claims are completely preempted by the amendments to the National Labor Relations Act ("NLRA") included in the Labor Management

---

[2] There seems to be much confusion regarding the proper name of the entity Plaintiff refers to as the Local. Frankly, the Parties' briefing did not illuminate the issue sufficiently for the Court to make a determination or even determine if one is necessary. The Court finds it unnecessary to sort this issue out at this stage in the proceedings. However, it anticipates the problem popping up at a later date. When it does, the Parties should be ready to fully inform the Court regarding the names and status of the proper Parties. In the meantime, the Court will refer to the Local and the Chemical Council together as "the Unions."

Relations Act ("LMRA").  *See* 29 U.S.C. § 185 *et seq.* (2000).  Plaintiff disagrees and has moved to remand this case.

## II.  Legal Standard

Absent an express provision to the contrary, a defendant may remove a state-court action to federal court only if the suit could have been filed originally in federal court.  *See* 28 U.S.C. §1441(a); *Caterpillar Inc. v. Williams,* 482 U.S. 386, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987).  Defendants allege that this case comes within this Court's federal question jurisdiction.  Congress has provided the federal courts with jurisdiction over "all civil actions arising under the Constitution, laws, and treaties of the United States."  28 U.S.C. §1331.  Generally, the existence of federal question jurisdiction is governed by the well-pleaded complaint rule, which provides that "federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  *Caterpillar*, 482 U.S. at 392 (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112-13, 57 S. Ct. 96, 97-98, 81 L. Ed. 70 (1936)).

An important corollary to the well-pleaded complaint rule is the artful pleading doctrine.  Although a plaintiff is the master of his complaint and may choose to assert only state law claims, a court will occasionally seek to determine whether the real nature of an action is federal, regardless of the plaintiff's characterization.  For instance, under the complete preemption doctrine, federal law can so thoroughly preempt a field of state law that the plaintiff's complaint must be characterized as stating a federal cause of action, even if the complaint, on its face, contains only state law causes of action.  *See, e.g., Caterpillar*, 482 U.S. at 393, 107 S. Ct. at 2430; *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 64, 107 S. Ct. 1542, 1547, 95 L. Ed. 2d 55 (1987); *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 10, 103 S. Ct. 2841, 2846, 77 L. Ed. 2d 420 (1983); *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 675, 94 S. Ct. 772, 781, 39 L. Ed. 2d 73 (1974).

For complete preemption to adhere, the federal law must so completely preempt the field that any suit that sounds in that area necessarily is a federal action.  *Wallace v. Ryan-Walsh Stevedoring Co.*, 708 F. Supp. 144, 151 (E.D. Tex. 1989).  This doctrine was first formulated by the Supreme Court in *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 88 S. Ct. 1235, 20 L. Ed. 2d 126 (1968).  The Court in *Avco* considered Section 301 of the LMRA, the same provision that is at issue here.  Section 301 states:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).  In *Avco*, the defendant, a labor union, removed to federal court a suit in which an employer sought an injunction against a labor strike, arguing that the strike violated a collective bargaining agreement between the employer and the union.  The Supreme Court upheld the union's removal despite the fact that the employer's suit contained no federal question on its face.  The Court concluded that Section 301 of the LMRA preempts state law so thoroughly that it forces the Court to recharacterize the plaintiff's complaint as arising under that section of the act.  *Id.* at 561, 88 S. Ct. at 1237.

The Fifth Circuit has further illuminated when labor-related claims are preempted.  In *Medran v. Excel Corp.*, 985 F.2d 230, 232 (5th Cir. 1993), the court stated:

> Any state law cause of action for violation of a collective-bargaining agreement is entirely displaced by federal law under section 301. *United Steelworkers of America, AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 368, 110 S. Ct. 1904, 1909, 109 L. Ed. 2d 362 (1990). Furthermore, state law is pre-empted by section 301 "in that only the federal law fashioned by the courts under section 301 governs the interpretation and application of collective-bargaining agreements." *Id.* A tort claim "inextricably intertwined" with consideration of the

>terms of the collective-bargaining agreement contract is pre-empted under section 301. *Allis-Chalmers v. Lueck*, 471 U.S. 202, 213, 105 S. Ct. 1904, 1912, 85 L. Ed. 2d 206 (1985). If, however, the state-law claim can be resolved without interpreting the collective-bargaining agreement itself, the claim is independent of the agreement for section 301 pre-emption purposes. *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 410, 108 S. Ct. 1877, 1883, 100 L. Ed. 2d 410 (1988).

### III. Analysis

Plaintiff essentially argues that there is no Section 301 preemption in this case because there was no collective bargaining agreement in place at the time of Plaintiff's termination. However, Plaintiff does rely on the application of the verbal Retroactivity Agreement and Interim Agreement to his claims. In fact, without the application of these two agreements, Plaintiff would have no claim to assert. Section 301 applies to "contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). The term "contracts," as it is used in Section 301, "includes more than 'collective bargaining agreements,' and is broad enough to include any agreement 'between employers and labor organizations significant to the maintenance of labor peace between them.'" *Deaton Truck Line, Inc. v. Local Union 612, Teamsters*, 314 F.2d 418, 422 (5th Cir. 1962); *see also, McNealy v. Caterpillar, Inc.*, 139 F.3d 1113 (7th Cir. 1998); *Dist. 2 Marine Engineers Beneficial Ass'n-Associated Maritime Officers v. Grand Bassa Tankers, Inc.*, 663 F.2d 392 (2nd Cir. 1981). The Retroactivity and Interim Agreements (collectively, "Agreements") as applied to Plaintiff are clearly contracts between an employer and a labor organization that are significant to the maintenance of labor peace between them. Given courts' broad reading of the word "contract" in Section 301, it is without hesitation that this Court determines that the Agreements are "contracts" for purposes of Section 301 analysis.[3]

---

[3] It is of little relevance that the Retroactivity Agreement was verbal. The language of Section 301, which has been broadly interpreted, does nothing to limit its applicability to written

Having found that the Agreements are entitled to the same treatment as an official collective bargaining agreement under Section 301, the Court must next determine whether Plaintiff's tort claims are so "inextricably intertwined" with consideration of the terms of the Agreements as to be pre-empted. *See Allis-Chalmers*, 471 U.S. at 213, 105 S. Ct. at 1912. In general, a state-law claim that can be resolved without interpreting a collective bargaining agreement or other covered contract is independent of the contract for pre-emption purposes and can be brought in state court. *See Lingle,* 486 U.S. at 410, 108 S. Ct. at 1883.

Plaintiff summarizes his claim on page 4 of his Original Complaint:

> "under the common law of the State of Texas, [Defendants] owed Plaintiff a duty to use reasonable care to protect the Plaintiff's rights in the arbitration process. [Defendants] all breached their obligations to Plaintiff by failing to make written demand for arbitration within the time specified in the interim arbitration agreement in effect between the Plaintiff's employer and the Union Defendants. Defendants' failure to submit a written demand for arbitration in a timely manner constituted common law negligence and was a proximate cause of damages sustained by Plaintiff. . . .Had the Union Defendants served Koch with a written demand for arbitration within thirty (30) days as required by the interim agreement concerning grievance and arbitration procedures that had been adopted by Koch and the Union Defendants on July 7, 2004, Plaintiff would have been reinstated in his job and would not have sustained the damages complained of herein"

These allegations require interpretation of the Agreements in several respects. First, Defendants' only duty to Plaintiff is defined by the Agreements. Absent the application of the terms of the Agreements, there is no conceivable argument that the Unions owed Plaintiff any common-law duty to demand arbitration. This duty is essential to Plaintiff's claim and cannot be defined without reference to and interpretation of the Agreements. Second, the rules governing arbitration of

---

contracts. Other courts faced with similar analysis have decided the same way. *See Warrior Constructors, Inc. v. Int'l Union of Operating Eng's, Local Union No. 926*, 383 F.2d 700 (5th Cir. 1967).

disputes are contained in the Interim Agreement, and there is no way to determine whether they were or were not violated without reference to the Interim Agreement. Third, whether or not Plaintiff would have been reinstated in his position will depend on the terms of the Interim Agreement. In order to assess any possible damages incurred by Plaintiff, reference simply must be made to the arbitration agreement. Since Plaintiff's claims are inextricably intertwined with the interpretation of the Agreements, they are specifically and completely preempted by Section 301. Accordingly, this Court has federal question jurisdiction over this case, and Defendants' removal was appropriate.

## IV. Conclusion

For the reasons outlined above, Plaintiff's Motion to Remand is **DENIED**. Each party is to bear its own taxable costs and expenses incurred herein to date.

**IT IS SO ORDERED**.

**DONE** this 26th day of October, 2006 at Galveston, Texas.

_____
Samuel B. Kent
United States District Judge